

**U.S. Department of Justice**

*United States Attorney
Eastern District of New York*

NMA:EMN
F.#2009R01060

*271 Cadman Plaza East
Brooklyn, New York  11201*

December 5, 2011

By ECF

Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  United States v. Anthony Borgese
         Criminal Docket No. 09-357 (ENV)

Dear Judge Vitaliano:

    The government respectfully writes in connection with the defendant Anthony Borgese's sentencing, which is scheduled for December 7, 2011 at 11:00 a.m.

I.  Background

    On June 3, 2009, a grand jury in the Eastern District of New York returned a sealed two-count indictment charging the defendant and two others with extortionate collection of credit conspiracy and extortionate collection of credit, both in violation of 18 U.S.C. § 894(a).  Specifically, the indictment charged the defendant, Joseph Orlando and Giovanni Monteleone with conspiring to use extortionate means (Count One), and using extortionate means (Count Two), to collect an extension of credit from John Doe, an individual who resided in the vicinity of Monticello, New York, on or about and between July 1, 2004 and August 1, 2004.  The victim-debtor in this case was severely assaulted by two of the defendant's criminal associates.  On February 9, 2011, the defendant pled guilty before Your Honor to Count One of the indictment pursuant to a plea agreement.

    Paragraph two of the plea agreement estimates that the defendant's total offense level is 20.  The estimate includes a three-point enhancement to reflect the severe physical injury suffered by the victim.  The estimate also subtracts three points

for acceptance of responsibility. Assuming a criminal history category of I, the plea agreement estimates that the defendant's U.S. Sentencing Guidelines ("Guidelines") range is 33 to 41 months. The plea agreement provides that "[t]he defendant stipulates to the above Guidelines calculation." The Probation Department's calculation is the same as that set forth in the plea agreement. (Presentence Investigation Report ("PSR") ¶ 87).

II. Discussion

In his sentencing memorandum, the defendant does not dispute that he played a central role in a crime of serious violence, yet he argues for a non-Guidelines sentence based on the effect incarceration will have on his health and family, his history of charitable acts, and the efforts he has undertaken since his arrest to publicly repudiate his participation in organized crime. The defendant requests a probationary sentence that "includes an element of community service." (Def. Mem. at 9).

A. The Nature and Circumstances of the Offense

Consideration of the nature and circumstances of the defendant's violent offense, pursuant to 18 U.S.C. § 3553(a), clearly militates in favor of a sentence that includes a significant period of incarceration.[1]

The defendant, an associate of the Gambino crime family of La Cosa Nostra ("Gambino crime family"), sought the help of Orlando, a Gambino crime family soldier, to assist in collecting a $5,000 debt owed to one of the defendant's acquaintances. (PSR ¶ 10). Orlando instructed two members of his crew – Monteleone and another accomplice - to meet with the defendant to carry out the collection effort. (Id.). Thereafter, the defendant met with Orlando's crew members at a diner, drove with them to the debtor's house to show them where he lived, and then left them to their work. (PSR ¶ 11). Monteleone and the accomplice then drove back to the debtor's house, waited for him to return home, and then assaulted him in the doorway of his house while his wife screamed at them to stop. (PSR ¶ 12). The debtor instructed his wife not to call the police - presumably out of fear of facing further reprisals - and was hospitalized with a broken jaw and broken ribs. (PSR ¶ 13 & n.2).

---

[1] As the defendant has significant means (PSR ¶¶ 79, 82, 85, 94), a fine within the Guidelines range of $7,500 to $75,000 is also clearly appropriate.

In his sentencing memorandum, the defendant denies having intended for the debtor to be assaulted and also denies having been a member of Orlando's crew.  (Def. Mem. at 3).  The defendant does not, however, deny being a mafia associate - and in fact "admits to maintaining a long term friendship with Orlando," an inducted member of the Gambino crime family.  (Id.). He also admits that he knew the defendant's crew members were violent men.  (Id.).  In short, the defendant does not deny what is plain from the facts: he was involved in a classic organized crime extortionate collection of credit conspiracy involving greed, violence and fear.  Accordingly, just as it is not surprising that the debtor - in the midst of being severely beaten for delinquent repayment of a $5,000 debt – would tell his wife not to call the police, it is not surprising that the debtor does not appear willing to come forward to make a victim impact statement or even to petition the Court for the restitution that is his due.

B.   The History and Characteristics of the Defendant

Consideration of the defendant's history and characteristics tempers somewhat the lengthy prison sentence otherwise called for by Section 3553(a).  While the defendant's past involvement in charitable acts appears sincere and warrants some consideration, what is unusual and bears particular mention are the efforts the defendant has made since his arrest 30 months ago to send the message to young people that the mafia is a scourge on our society.

In the past, the defendant, who spent a portion of his time acting in mafia roles on television and in movies, plainly enjoyed blurring the line between fiction and reality.  As he explained in a public service announcement (attached to his sentencing submission), which appears to have been filmed prior to his entering a guilty plea in this case,

> I play a lot of tough guy and gangster roles.
> But in real life that don't work, kids. . . .
> I can see when I walk down the street, or I
> walk into a diner or a restaurant, how people
> are whispering or talking about me behind my
> back, which I deserve.  I want to tell you:
> You will pay for this for the rest of your
> life.  If you ever break the law, and you
> think you're a wiseguy, you're not.

Many defendants enter this courthouse and, by pleading guilty, accept responsibility for crimes relating to their involvement in organized crime.  Very rarely, however, do they take the next

4

step and publicly repudiate "the life." All too often, they simply serve time in prison and resume their criminal activities upon their release.

The defendant committed the violent crime for which he now faces sentencing when he was a 65-year-old man. In the wake of his arrest, and doubtless motivated at least in part by self-interest, he has begun to make amends by publicly condemning the life of organized crime. The efforts the defendant has begun - which include the public service announcement quoted above and a speech to high school students - appear to be sincere inasmuch as he has specifically requested imposition of a community service component for any sentence the Court may impose. The government agrees that community service should be ordered as a condition of any supervised release or probation the Court may order. U.S.S.G. § 5F1.3.

III. Conclusion

Due to the seriousness of the underlying offense conduct, the need to promote respect for the law and to provide just punishment and deterrence, the government respectfully requests that the Court fashion an appropriately punitive sentence in this case, including some period of incarceration. Should Your Honor conclude, however, that a probationary sentence is appropriate, the government respectfully requests that the Court require the defendant to serve a period of home confinement commensurate with the advisory Guidelines range and to perform a significant period of community service. See U.S.S.G. §§ 5F1.2 and 5F1.3. In either case, a punitive fine within the advisory Guidelines range of $7,500 to $75,000 should also be imposed.

    Respectfully submitted,

    LORETTA E. LYNCH
    United States Attorney

By:     /s/
    Evan M. Norris
    Assistant U.S. Attorney
    (718) 254-6376

cc: Kevin Faga, Esq. (by ECF)
    Holly Kaplan, U.S.P.D. (by electronic mail)
    Clerk of Court (ENV) (by ECF)